## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

        v.          :            Criminal No. 11-254

LARRY McDANIEL       :

## GOVERNMENT'S TRIAL MEMORANDUM

The United States submits this trial memorandum to advise the Court of issues that may arise at trial.  The United States respectfully requests that it be afforded the opportunity to provide additional written submissions to the Court in response to any defense submissions or in the event that other issues arise during the course of the trial.

## I.    THE INDICTMENT

On February 16, 2012, a federal grand jury returned a nine-count superseding indictment of the defendant, Larry McDaniel, and his co-defendant, Shawn Lyons.[1]  McDaniel is charged in the following eight counts:

- Count One:  conspiracy to distribute 28 grams or more, that is, approximately 47.4 grams, of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846 and 841(a)(1),(b)(1)(B);

- Counts Two, Four, and Five:  distributing, and aiding and abetting the distribution of, cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C) and 18 U.S.C. § 2;

- Counts Three and Six:  distributing, and aiding and abetting the distribution of, cocaine base ("crack") within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2;

---

[1]According to his attorney, Lyons will plead guilty to the charges against him at the change-of-plea hearing scheduled for February 21, 2012.  Trial in this matter, therefore, will involve the charges against McDaniel only.

2 of 16

- <u>Count Seven</u>:  distributing, and aiding and abetting the distribution of, cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C)

- <u>Count Eight</u>:  distributing cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C)

These offenses arise from the defendant's narcotics-distribution activities between April 9, 2010, through August 23, 2010, in Darby Borough, Yeadon, and Philadelphia, all in the Eastern District of Pennsylvania.

## II.    <u>SUMMARY OF THE CASE</u>

<u>With respect to Count One</u>:

Between April 9, 2010 and May 6, 2010, the defendant participated in a conspiracy with his co-defendant Shawn Lyons to distribute cocaine base ("crack) in Darby Borough, Yeadon, and Philadelphia.  As part of the conspiracy, a confidential source ("CS #1"), acting at the direction of law enforcement, sought to purchase cocaine from the defendant.  The defendant went to Lyons, got crack from him, and sold it to CS#1 or actually traveled with Lyons to go sell the crack to CS#1.  In addition, the defendant also brokered a deal for a federal agent, acting in an undercover directly, to buy crack[2] directly from Lyons.  On at least one occasion, on April 27, 2010, Lyons met with the undercover agent and distributed crack to the agent in exchange for money.   And on May 6, 2010, the defendant received $100 from the undercover agent for arranging a meeting on that same day between Lyons and the undercover agent.  Though the deal between Lyons and the agent was not completed on that day (because Lyons grew suspicious that

---

[2]      All of the crack discussed herein was positively identified through testing by analysts at the DEA's Northeast Regional laboratory.

the agent was in fact working with law enforcement), McDaniel tried to urge him to complete the deal and also kept the $100 for brokering the deal.[3]

<u>With respect to Counts Two and Three</u>:

On April 9, 2010, the defendant was introduced to CS#1, acting under the direction of law enforcement officers, in Darby Borough and told that CS #1 sought to buy crack from the defendant.  Upon meeting CS#1 inside of the residence located at 423 Main Street in Darby Borough, the defendant went to see his crack source of supply, Lyons, who was sitting in a four-door, white 2005 Chevrolet Yukon Denali ("White Denali") parked across the street.  Inside the White Denali, Lyons distributed crack to the defendant.  The defendant, in turn, took the crack, which was approximately 6.7 grams, and sold it to CS#1 inside the residence at 423 Main Street and received $285 from CS#1.  This deal occurred within 1,000 feet of a day care center, Today's Learning Center, that is located at 328 Main.

<u>With respect to Count Four</u>

Over the telephone, the defendant and CS#1 arranged for the defendant to sell crack to CS #1.  The defendant told CS#1 to meet him at the Parkview Shopping Center in Yeadon, Pennsylvania, where he will be with his source of supply, referring to Lyons.  Lyons, driving the White Denali, was observed by surveillance arriving in the vicinity of 419 Main Street in Darby Borough, where he picked up the defendant.  Next, surveillance units saw Lyons and the defendant arrive at the Parkview Shopping Center, located at 1607 Patricia Drive in Yeadon, in

---

[3]      The description related to counts two through six, below, provide further details regarding the conspiracy between the defendant and Lyons.

the White Denali.  CS #1 was waiting at that location in CS #1's car.  The defendant got out of the White Denali and entered CS #1's car.

Inside of CS #1's car, the defendant distributed to CS #1 an off-white chunky substance in two clear knotted bags, consisting of approximately 13.7 grams of crack, in exchange for $550 in cash.  Following this transaction, Lyons picked up the defendant in the White Denali and they returned together to the vicinity of 419 Main Street in Darby Borough.

<u>With respect to Counts Five and Six</u>

On or about April 22, 2010, over the telephone, the defendant and a DEA agent, acting in an undercover capacity (the "undercover agent"), discussed arrangements for the defendant to sell crack to the undercover agent.  The defendant gave his telephone number to the undercover agent and instructed the undercover agent to call him whenever the agent wanted to buy crack.

On April 27, 2010, the undercover agent called the defendant, and the defendant gave Lyons's number to the agent to call Lyons directly to purchase crack.   Over the telephone, Lyons and the undercover agent arranged for Lyons to sell to the undercover agent an ounce of crack in exchange for $1100 in the vicinity of 8th Street and Lehigh Avenue, in Philadelphia.

Lyons failed to appear at that location; however, he called the undercover agent and directed the agent to meet him at a specific location in South Philadelphia.  The undercover agent arrived in the vicinity of 9th Street and Fitzwater Street, where Lyons was standing.  Lyons went inside the White Denali and then got into the undercover agent's car.  Inside of the undercover agent's car, Lyons distributed approximately 27 grams of crack to the undercover agent in exchange for $1100 in cash.  This sale occurred within 1,000 feet of the real property comprising the Palumbo Recreation Center, a playground, located on 725 South 10th Street, in Philadelphia.

<u>With respect to Counts Seven and Eight</u>:

On August 23, 2010 members of a DEA and Darby task force formulated plans to have a CS #1purchase more crack from the defendant.   That afternoon, CS#1 saw the defendant standing next to a blue Buick Park Avenue sedan registered in his name.  Agents observed the defendant sitting on the trunk of this car talking to the CS on South 5th Street, by Chestnut Street, in Darby Borough.  While standing next to CS#1's car, the defendant sold CS#1 approximately 0.84 grams of crack in exchange for $60.  CS#1 turned over the crack, packaged in six blue zip-lock bags, to DEA.  The sale occurred approximately 329 feet of Christ Haven Annex Educational Center, a private elementary school, located at 521 Walnut Street.

## III.   LEGAL STANDARDS

The government describes below the general legal principles which should govern at trial, and details the law concerning various evidentiary issues that may arise.  Section A, below, provides a comprehensive discussion not only of the law of conspiracy, which is charged in Count One, but also of the legal standards governing admission of evidence to prove a conspiracy.  This section also describes the bases for admission of evidence as to other substantive counts.  Section B briefly outlines the essential elements of other counts at issue in this case.

### A.   Conspiracy

#### 1.   <u>Conspiracy Generally</u>

Where, as here, the indictment charges the existence of a conspiracy containing multiple members, the United States must provide evidence at trial that will allow a reasonable fact finder to conclude beyond a reasonable doubt that the defendant and at least one other person shared a

"unity of purpose" or the intent to "achieve a common goal" and an agreement to "work together toward the goal." United States v. Applewaite, 195 F.3d 679, 684 (3rd Cir. 1999) (citations omitted). The United States is not required to prove the existence of an express or formal agreement; "a tacit understanding is sufficient." Ianelli v. United States, 420 U.S. 770, 777 n.10 (1975). Further, proof of the existence of an agreement may be established entirely by circumstantial evidence. Conspiracy law merely requires that the inferences drawn have a logical and convincing connection to the evidence. Applewaite, 195 F.3d at 684. Moreover, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992).

It bears observing that the government, to sustain a conspiracy conviction, need only show sufficient evidence that the defendant conspired with "someone -- anyone." United States v. Pressler, 256 F.3d 144, 149 (3rd Cir. 2001) (quoting United States v. Obialo, 23 F.3d 69, 73 (3rd Cir. 1994)).

### 2.   Factors Demonstrating Existence of a Conspiracy

A pattern of sales for resale between the same persons, together with details supplying a context for the relationship, can establish the existence of a conspiracy. "Even a single sale for resale, embroidered with evidence suggesting a joint undertaking between buyer and seller, could suffice . . . Common knowledge, interdependence, shared purpose and the other ingredients of a conspiracy are matters of degree. Almost everything in such a case depends upon the context and the details. The evaluation of the facts is entrusted largely to the jury." United States v. Moran, 984 F.2d 1299, 1303 (1st Cir. 1993) (citations omitted).

6

"The elements of a charge of conspiracy are:  (1) 'a unity of purpose between the alleged conspirators;' (2) 'an intent to achieve a common goal;' and (3) 'an agreement to work together toward that goal.'"  United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999). The Court in Gibbs noted that "even an occasional supplier (and by implication an occasional buyer for redistribution) can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation.'"  Id. at 198, quoting United States v. Price, 13 F.3d 711, 728 (3d Cir. 1994), and citing United States v. Theodoropoulos, 866 F.2d 587, 594 (3d Cir. 1989).

The facts that can support the existence of a conspiracy are quite varied and include the following:

- the length of affiliation between the parties, Gibbs, 190 F.3d at 199;

- repeated, familiar dealings, which provide an inference that the buyer "comprehends fully the nature of the group with whom he [or she] is dealing, is more likely to depend heavily on the conspiracy as the sole source of his [or her] drugs, and is more likely to perform drug-related acts for conspiracy members in an effort to maintain his [or her] connection to hem," id.;

- knowledge of buyer that seller sells to people other than himself; knowledge of seller that buyer is re-seller, id. at 201;

- code used in drug transactions, United States v. Pressler, 256 F.3d 144, 153, n.4 (3d Cir. 2001) (citing Gibbs); and

- extensive use of phones between parties involved in drug trafficking, United States v. Rodriguez, 215 F.3d 110, 117 (1st Cir. 2000).

In United States v. Perez, 280 F.3d 318 (3d Cir. 2002), the Third Circuit noted several factors that would warrant an inference that defendant was part of a conspiracy:

7

> (1) the length of affiliation between the defendant and the conspiracy; (2) whether there is an established method of payment; (3) the extent to which transactions are standardized; and (4) whether there is a demonstrated level of mutual trust.

Id. at 343 (citations omitted).  While these factors "are not necessarily dispositive of the issue," id., they certainly justify a conclusion that there was a conspiracy.  "[T]heir presence suggests that a defendant has full knowledge of, if not a stake in, a conspiracy . . ."  Id.  "[W]hen a defendant drug buyer has repeated, familiar dealings with members of a conspiracy, that buyer probably comprehends fully the nature of the group with whom he is dealing . . ."  Id.  The conspirator "is more likely to depend heavily on the conspiracy as the sole source of his drugs, and is more likely to perform drug-related acts for conspiracy members in an effort to maintain his connection to them."  Id.

### 3.   Events Not Specifically Alleged in Count One

Title 21, United States Code, Section 846 does not require that the government allege or prove an overt act in order to prove a violation of the statute.  There are a wide variety of facts adverted to in the indictment; there are also a wide variety of facts that were not alleged in the indictment, but which prove the conspiracy.  This additional evidence relates directly to the conspiracy, and is admissible despite the fact that it is not specifically discussed in the indictment.  See United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged); United States v. Thai, 29 F.3d 785, 812-13 (2d Cir. 1994) ("[i]t is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy . . . An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule

404(b); rather it is part of the very act charged.") (internal quotations and citations omitted). In

United States v. Cross, 308 F.3d 308 (3d Cir. 2002), the Third Circuit explained that "acts are

intrinsic when they directly prove the charged [crime]."

4.     Admissibility of Co-Conspirator Statements

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement made by a

co-conspirator of a party during the course and in furtherance of that conspiracy" is not hearsay

and may be admitted as evidence against a co-conspirator.  In order for a court to admit the

co-conspirator statements, the government must prove:  (1) that a conspiracy existed; (2) that the

declarant and the defendant were both members of the conspiracy; (3) that the statements were

made in the course of the conspiracy; and (4) the statement was made in furtherance of the

conspiracy.  United States v. Bourjaily, 483 U.S. 171, 175 (1987); United States v. McGlory, 968

F.2d 309, 333-34 (3d Cir. 1992); United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991).

In making a preliminary factual determination as to the existence of a conspiracy and the

defendant's participation in it, courts may consider the offered hearsay statement itself.

Bourjaily, 483 U.S. at 180-81.  "[T]here is little doubt that a co-conspirator's statements could

themselves be probative of the existence of a conspiracy and the participation of both the

defendant and the declarant in the conspiracy."  Id.; see also McGlory, 968 F.2d at 334.

Moreover, the district court may consider the totality of the circumstances when deciding

the admissibility of such evidence. "The circumstances surrounding the statement, such as the

identity of the speaker, the context in which the statement is made, or evidence corroborating the

contents of the statement," should be considered by the trial court.  See Fed. R. Evid. 801(d)(2)

(Advisory Committee Notes).  United States v. Traitz, 871 F.2d 368, 399 (3d Cir. 1989).

Furthermore, the existence of the conspiracy and the party's participation in that conspiracy need

only be proved by a preponderance of the evidence.  Bourjaily, 483 U.S. at 175.

Although casual conversations between co-conspirators are inadmissible, statements

that, among other things, maintain cohesiveness and convey information relevant to

conspiratorial objectives are in furtherance of the conspiracy and admissible under Rule

801(d)(2)(E).  Traitz, 871 F.2d at 399.  Accordingly, "statements of a co-conspirator identifying a

fellow co-conspirator as his source of narcotics are statements made in furtherance of the

conspiracy."  United States v. Lambros, 564 F.2d 26, 30 (8th Cir. 1977); see United States v.

Munson, 819 F.2d 337, 341 (1st Cir. 1987); United States v. Anderson, 642 F.2d 281, 285 (9th

Cir. 1981).

The Third Circuit has commented that the "in furtherance" requirement is to be

given a broad interpretation.  United States v. Gibbs, 739 F.2d 838, 843 (3d Cir. 1984); United

States v. DePeri, 778 F.2d 963, 981 (3d Cir. 1985).  Although the "during the course of" and "in

furtherance" requirements do not overlap entirely, they are closely related.  United States v.

Ammar, 714 F.2d 238, 253 (3d Cir.1983). While mere narratives of past events or mere idle

chatter that has no current purpose are not generally deemed to occur in furtherance of the

conspiracy, statements that "provide reassurance, serve to maintain trust and cohesiveness among

co-conspirators, or inform each other of the current status of the conspiracy" further the

conspiracy.  Id, at 252; see United States v. Harris, 908 F.2d 728, 737 (11th Cir. 1990); United

States v. Hudson, 970 F.2d 948, 958-59 (1st Cir. 1992).  For example, statements which are

relevant to the distribution of the proceeds of the conspiracy are considered in furtherance of the

conspiracy.  <u>Ammar</u>, 714 F.2d at 253.  In order for statements to be deemed "in furtherance of the conspiracy," they need not actually "further" the conspiracy; it is sufficient that a statement was intended to promote the conspiracy, even if it did not actually do so.  <u>See United States v. Williams</u>, 989 F.2d 1061, 1068 (9th Cir. 1993); <u>United States v. Mayes</u>, 917 F.2d 457, 464 (10th Cir. 1990).

**B.    Essential Elements**

1.    <u>Conspiracy to Distribute Cocaine Base ("Crack")</u>

To establish a violation of Title 21, United States Code, Section 846 (conspiracy to distribute 28 grams or more of cocaine base ("crack")), as charged in Count One of the superseding indictment, the government must prove the following elements beyond a reasonable doubt:

1.    That two or more persons agreed to distribute a controlled substance, in this case 28 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack");

2.    That the defendant was a party to or member of that agreement; and

3.    That the defendant joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective.

2.    <u>Distribution of Cocaine Base ("Crack")</u>

To establish a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C) (distribution of cocaine base ("crack")), as charged in Counts Two, Four, Five, and Seven of the superseding indictment, the government must prove the following elements beyond a reasonable doubt:

1.      That the defendant possessed a controlled substance, in this case a mixture or substance containing a detectable amount of cocaine base ("crack");

2.      That the defendant distributed the controlled substance; and

3.      That the defendant did so knowingly or intentionally.

### 3.      Distribution of Cocaine Base ("Crack") Within 1,000 Feet of a Protected Location

To establish a violation of Title 21, United States Code, Section 860(a) (distribution of cocaine base ("crack")  within a 1,000 feet of a protected location), as charged in Counts Three, Six, and Eight of the superseding indictment, the government must prove the following elements beyond a reasonable doubt:

1.      The defendant distributed a controlled substance, in this case, a mixture or substance containing a detectable amount of cocaine base ("crack"); and

2.      The defendant did so knowingly or intentionally;

3.      The defendant did so with intent to distribute the crack; and

4.      At the time the defendant committed the offense contained in paragraphs 1 through 3, he was within 1,000 feet of a protected location (daycare, playground, or school).

### 4.      Aiding and Abetting

To establish a violation of Title 18, United States Code, Section 2 (aiding and abetting), as charged in Counts Two through Six of the indictment, the government must prove beyond a reasonable doubt:

1.      That another person (commonly referred to as a "principal") committed the offenses charged by committing each of the elements of the offenses charged;

2.      That the defendant knew that the offenses charged were going to be committed or were being committed by the principal;

3.      That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offenses charged and with the intent that the principal commit those specific offenses; and

4.      That the defendant's acts did, in some way, aid, assist, facilitate, or encourage, the principal to commit the offenses.

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime.

The government must prove that a defendant knowingly and deliberately associated himself with the crime in some way as a participant – someone who wanted the crime to be committed – not as a mere spectator.

## IV.    WITNESSES

The United States anticipates the following witnesses will be called to testify during the government's case-in-chief:

- CS#1
- Gibney, Lt. Richard (Darby Police)
- Godlewski, Special Agent Marc (DEA)
- Jordan, Special Agent Ann (DEA)
- Miller, Patrolman Michael (Amtrak)
- O'Rourke, Analyst Brian (DEA)
- Patten, Special Agent Gordon
- Pitts, Detective Brain (Darby Police)
- Quartapella, Detective Julius (Darby Police)
- Trainor, Special Agent Patrick (DEA)
- Trigg, Cpl. Joseph (Darby Police)
- Updegraff, Special Agent Randy (DEA)
- Waddell, Special Agent Craig (DEA)

The United States reserves the right to call additional witnesses other than those described here, as may come to the attention of the United States subsequent to the preparation of this memorandum.

## V.      POTENTIAL TRIAL ISSUES

### A.      Exhibits - Presented in Electronic Format

The government will provide the Court as well as defense counsel with exhibit notebooks prior to the start of trial.  In addition, in order to move quickly and save significant time in presenting the evidence the government will have the exhibits loaded into a computer using the "Sanctions" program, to allow for their display electronically to the jury.

### B.      Potential Stipulations

The government will inquire if counsel is willing to stipulate to the analysis of the controlled substances and other issues to streamline the presentation of the evidence at trial.  The government and defense counsel will inform the Court with any agreed-upon stipulations on March 12, 2012.

## VI.      OTHER ISSUES

Obviously, potential rebuttal witnesses exist, whose presentation would depend on whether defendants elect to present any defense, and if they do, what they or other witnesses say in the course of that defense.

Jury instructions, verdict sheets and voir dire will be filed under separate cover.

## VII.      ESTIMATED LENGTH OF GOVERNMENT'S CASE

The government expects its case-in-chief to take approximately two days after the jury is selected.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

/s/_____
THOMAS R. PERRICONE
Chief, Violent Crimes and Firearms Section
Assistant United States Attorney

/s/_____
SOZI P. TULANTE
Date:  February 21, 2012             Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Trial Memorandum to be served by electronic filing and electronic mail to Douglas C. Greene, counsel for Larry McDaniel.

_____/s_____
SOZI P. TULANTE
Assistant United States Attorney

Dated: February 21, 2012